UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 20-40338 |
| | ) | Chapter 7 |
| JERRY RICHARD STEPHENS | ) | |
| SSN/ITIN xxx-xx-0979 | ) | |
| | ) | |
| and | ) | MOTION TO |
| | ) | APPROVE |
| KATHLEEN MARY STEPHENS | ) | COMPROMISE |
| SSN/ITIN xxx-xx-1021 | ) | |
| | ) | |
| Debtors. | ) | |

COMES NOW Lee Ann Pierce, Chapter 7 Trustee in the above captioned bankruptcy, and hereby moves the Court for an order authorizing her to compromise a dispute with Independent Ag, Inc. as set forth below. In support of her motion, the Trustee provides the following information:

1.  Debtors filed for Chapter 7 Bankruptcy on August 20, 2020.

2.  On Schedule A/B, Debtors stated they had an interest in real property legally described as:

> Lot 1 of Erickson and Rich's First Addition to Ramona Beach Subdivision in the Southeast Quarter (SE 1/4) of Section 27, Township 124 North, Range 53 West of the 5th P.M., Day County, South Dakota, according to the recorded plat thereof.

3.  Debtors listed the above real property on Schedule A/B with a value of $499,000.00. The above-described real property was not Debtors' homestead and they were not entitled to claim it exempt.

4.  On November 12, 2020, the Debtors filed a Motion to Compel Abandonment (doc. 25). The Trustee filed a response in objection to the motion on November 30, 2020 (doc. 30). On March 22, 2021, the Debtors withdrew the Motion to Compel Abandonment (doc. 74).

5.  On February 17, 2021, the Trustee filed a Motion for Authorization to Sell Real Property "As Is" by Private Sale Free and Clear of All Liens and Encumbrances of any Kind With Proceeds to Attach Thereto and Confirm Sale (doc. 38) for the sum of $519,000.00 for the real property and $1,000.00 for the sale of a dock water pump. .

6.  An Order Re: Trustee's Motion for Authorization to Sell Real Property "As Is" by Private Sale Free and Clear of All Liens and Encumbrances of Any Kind With Proceeds to Attach Thereto was entered on March 22, 2021 (doc. 68).

7.  The real property was sold subject to the following mortgages:

> a.   Mortgage dated April 20, 2012, executed by Jerry Stephens and Kathleen Stephens, husband and wife, to MERS (Mortgage Electronic Registration Systems, Inc.) solely as nominee for Minnwest Mortgage Corporation, lender for the principal

sum of $300,000.00 and interest, filed on April 24, 2012 and recorded in Book 282 of Mortgages on page 488.

Said Mortgage was assigned to U.S. Bank National Association, its successors and assigns by Assignment of Mortgage filed on September 29, 2020, and recorded in Book 323 of Mortgages on page 364.

The amount required to pay this loan in full as of September 10, 2021, was $83,219.20. After September 10, 2021, interest accrues at the rate of $6.30 per day on the principal balance of $76,600.09.

b.   Mortgage dated December 31, 2018, executed by Jerry R. Stephens and Kathleen M. Stephens, as husband and wife to Minnwest Bank for the principal sum of $500,000.00 and interest, filed on January 7, 2019, and recorded in Book 314 of Mortgages on page 178.

The amount required to pay this loan in full as of August 20, 2021 was $255,293.69. After August 20, 2021, interest accrues at the rate of $28.87 per day.

c.   Mortgage dated September 26, 2019, executed by Jerry R. Stephens and Kathleen M. Stephens, to Independent Ag, Inc., Inc. for the principal sum of $575,000.00 and interest, filed on September 30, 2019, and recorded in Book 316 of Mortgages on page 786.

8.   The Trustee questioned the validity of the mortgages and employed attorney, Kenneth C. Edstrom, of Sapientia Law Group, to investigate the validity of the liens listed above. The Court entered an Order Authorizing Employment of Attorney Edstrom on March 2, 2021 (doc. 43).

9.   Pursuant to the Court's order, on March 24, 2021, the Trustee sold the real property described above. The Trustee received net proceeds of $519,975.00 from the sale. Of this amount, $1,000.00 is for the sale of personal property.

10.   As part of the due diligence required by §547(b) of the bankruptcy code, Attorney Edstrom investigated and analyzed possible causes of action against Independent Ag, Inc., regarding the $575,000.00 mortgage placed on the Debtors' lake home in September of 2019, which was less than one year prior to the Debtors filing for bankruptcy on August 20, 2020, and confirmed the validity of the other two mortgages. Attorney Edstrom engaged in informal discovery with counsel for Independent Ag, Inc., Inc. examining the potential of bringing a state law cause of action for lack of consideration and eventually determined the only two causes of action that were viable were (1) constructive fraudulent transfer, in violation of 11 U.S.C. § 548(a)(1)(B), or (2) voidable preference claim to a creditor who is an insider, in violation of 11 U.S.C. § 547(b)(4)(B).

11.   As relates to a potential action for constructive fraudulent transfer, the problem is that in pursuing a fraudulent transfer claim the Trustee would need to prove the element regarding reasonably equivalent value for the transfer. Although there are some minority opinions holding that securing a previous debt is not always reasonably equivalent value, in this case, there was no doubt that the $575,000.00 which ultimately became the subject of the mortgage in question was a valid prior debt that had been consistently booked by Independent Ag, Inc. as a debt and that interest had been consistently collected on the debt by Independent Ag, Inc. over the years the loan had been on their books. While the initial guarantee of that debt by the Debtors in April

of 2019, prior to the securing of that personal debt with a mortgage in September of that year, could be viewed as lacking in reasonably equivalent value, Independent Ag, Inc. argues that without the Debtors' guarantee of the corporate debt, Independent Ag, Inc. would not have continued to lend Debtors' business, Express Ag, additional funds, funds the Debtors needed to continue to operate their company.

12.   As relates to a preferential transfer to an insider action under 11 U.S.C. § 547(b)(4)(B), a trustee may avoid any transfer of an interest of the debtor in property to or for the benefit of a creditor for or on account of an antecedent debt owed by the debtor before such transfer was made, where such transfer was made while the debtor was insolvent, between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider.

13.   There is no dispute the transfer in question, i.e. the execution of the mortgage, was within the time frame established by the preference statute as to insiders. Nor is there any dispute Debtors transferred to Independent Ag, Inc. an interest in Debtors' real property during a time in which the Debtors were insolvent. The key issue in a preference cause of action would be whether the transfer was to an insider under Section 547(b)(4)(B).

14.   In this case, the note securing the mortgage was made by Express Ag, Inc. in favor of Independent Ag, Inc. on April 1, 2019 and was personally guaranteed by the Debtors. The note came due on July 1, 2019. It does not appear Independent Ag, Inc. attempted to collect the loan in July. As of the signing of the mortgage in September of 2019, the Debtors' company, Express Ag, Inc., had been out of business for less than a week. The issue for determination of whether such a transaction was between insiders is largely based upon whether the transaction was in the ordinary course of business and even more specifically, whether the creditor was in control of the Debtors at the time of the transaction. There are facts pointing both ways. Independent Ag, Inc. had quickly shored up its position after Express Ag, Inc. went out of business. The fact of the speed of the transaction coming days after the collapse of the Debtors' business could indicate Independent Ag, Inc. was in control of the Debtors' company. However, even if Independent Ag, Inc. was proved to be in control of Express Ag, since Express Ag was already out of business at the time of the execution of the mortgage, it is unknown how the Court would treat previous control over a company that was not in business as of the time of the transfer. Further, there is the issue of whether Independent Ag, Inc. controlled the Debtors as opposed to merely the Debtors' company which would involve a significant separate burden for the Trustee to undertake at trial as to the separate identities between the Debtors and their company.

15.   In addition, Independent Ag, Inc. argues the September 2019 mortgage was an arms-length transaction. Not only had Independent Ag, Inc. loaned $575,000.00 to the Debtors' company previously, in addition, from March 2019 to September of 2019, Independent Ag, Inc. had also provided open credit to the Debtors' company of over two million dollars. This large credit was extended upon Independent Ag, Inc.'s belief that a separate security agreement executed by Independent Ag, Inc. with the Debtors' company in March of 2019 primed a bank's previously filed blanket security interest in certain assets of the Debtors' company. That turned out not to be the case and as of September, the only asset, corporate or personal, left to protect the creditor's debt with the Debtors (who had personally guaranteed the corporate debt) was a mortgage on the Debtors' lake home. There is doubt whether the Court would find, under the circumstances, that the execution of the mortgage with Independent Ag, Inc. was not an arms-length transaction and/or that Independent Ag, Inc. was in control of the Debtors at the time of the signing of the mortgage.

16.     An adversary action in this matter would not be subject to a summary judgment motion because of the disputed facts.  It would likely be an all or nothing litigation with significant costs being charged to the bankruptcy estate for several depositions and potential expert expense for electronic copying of computer hard drives and analysis of those hard drives for discovery of all relevant communications between the Debtors and Independent Ag, Inc. and any deleted communications between the Debtors and Independent Ag, Inc..

17.     After considering the costs of litigation, the parties have agreed the Trustee will retain $60,000 of the net real estate sale proceeds subject to the conditions set forth in item 18 below which will resolve all disputes between the Trustee and Independent Ag, Inc. regarding this case.

18.     The terms of the agreement are that the Trustee will pay from the net proceeds received from sale of the real property:

    a.    The mortgage owed to U.S. Bank National Association in full;
    b.    The mortgage owed to Minnwest Bank in full;
    c.    The Trustee will retain from the net sale proceeds from the sale of the real property the $60,000.00 settlement amount set forth in paragraph 17;
    d.    The remainder of the net sale proceeds from the sale of the real property will be distributed to Independent Ag, Inc.; and
    e.    As part of the settlement, the Trustee will not object to Independent Ag, Inc.'s. Proof of Claim 7-1 in the amount of $1,289,592 minus the amount the Trustee pays Independent Ag, Inc. on it's secured claim.

The Trustee represents that the foregoing constitutes a fair and reasonable solution and is in the best interests of the creditors and the estate.

Dated: September 13, 2021.    FITE & PIERCE LAW OFFICE

/s/ Lee Ann Pierce
By: Lee Ann Pierce
Chapter 7 Bankruptcy Trustee
316 Fourth Street
P.O. Box 524
Brookings, SD 57006-0524
Phone:  605/692-9415
Fax:  605/692-1433